AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

United States of America
v.

PRANAV PATEL

*Defendant(s)*

Case No. 8:23MJ2526SPF

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of August 15, 2023 through December 6, 2023 in the county of Hillsborough & Pasco in the
Middle District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Justin Camp, USSS
*Printed name and title*

Sworn to before me over the telephone and
signed by me pursuant to Fed. R. Crim. P. 4.1 and 41 (d)(3).

Date: 12/7/2023

*Judge's signature*

City and state: Tampa, FL

SEAN P. FLYNN, UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

I, Justin Camp, being duly sworn, deposes and states the following:

## INTRODUCTION AND BACKGROUND

1. I make this affidavit for the purpose of supplying probable cause to support a criminal complaint against PRANAV PATEL (PATEL). Because this affidavit is made for the sole purpose of providing probable cause to support a criminal complaint against PATEL, I have not included every detail of every aspect of the investigation. Rather, I have set forth the facts that are necessary to establish probable cause to show PATEL is in violation of Title 18 U.S.C. § 1343 (Wire Fraud).

2. I am a Special Agent with the United States Secret Service (USSS) and have been employed by the USSS as a Special Agent since December 2001. I am currently assigned to the Tampa Field Office and serve in the Tampa Bay Cyber Fraud Task Force. As a Special Agent with the USSS, I have the authority to conduct criminal investigations, execute search warrants, and make arrests in cases involving violations of Federal criminal law. I have received training in the investigation of financial crimes and have experience investigating violations of federal laws including counterfeit currency, bank fraud, wire fraud, mail fraud, money laundering and related offenses. As a USSS Special Agent, I am charged with the duty of enforcing the law of the United States of America and possesses the authority to request, obtain, and execute orders of the United States Courts.

3. I am investigating allegations of criminal activity committed by **PATEL**. The investigation also involves law enforcement personnel from the Hillsborough County Sheriff's Office (HCSO) and Pasco County Sheriff's Office (PCSO).

5. The statements contained in this affidavit are based on my personal knowledge, information obtained by me, information collected and analyzed by other Special Agents, and other agencies participating in this investigation, and information that has been reviewed by me. This affidavit does not set forth every fact resulting from the investigation; rather, it sets forth facts sufficient to establish probable cause to charge **PATEL** with Wire Fraud in violation of 18 U.S.C. § 1343, which prohibits the use of wire communications in interstate commerce in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."

## FACTS ESTABLISHING PROBABLE CAUSE

6. On November 29, 2023, HCSO responded to a residence at ▮▮▮ ▮▮▮▮▮▮▮▮▮▮, Ruskin, Florida ▮▮▮▮, (within the Middle District of Florida) reference an elderly victim who had been the victim of a fraud. Starting in approximately July 2023, Victim 1 (E.L.), handed over approximately $170,000.00 in United States (U.S.) currency, as well as gold to an unknown subject/courier she believed to be an Officer with the United States Department of the Treasury (Treasury).

2

7. Victim 1 was contacted several times over the summer from the business entity identified as PayPal alleging she owed them $550.00. Victim 1 searched PayPal using her home computer. Victim 1 then called what she believed to be PayPal's toll free, 1-800 customer service number. When Victim 1 was on the telephone with individuals she believed were employees of PayPal, the individual requested her PayPal account information. Victim 1 did not have that information, so the Paypal "employees" obtained her name and confirmed her account was fraudulently created. The Paypal "employee" representative, "Andrew Roberts" informed Victim 1 that she would be transferred to their legal team. Victim 1 was then provided with the name of "Alvaro Bedeyn". Victim 1 was connected to Bedeyn, who advised he was an attorney with the Federal Trade Commission (FTC). Bedeyn informed Victim 1 she could search his name through Wikipedia to verify his identity. Victim 1 was advised that when searching "Alvaro Bedeyn", she noticed that the spelling was incorrect. However, Victim 1 continued with their conversation. While on the phone with the unknown suspect, Victim 1 was informed that she had a federal warrant for her arrest for money laundering. The suspect informed Victim 1 that the only way to clear her warrant was to liquidate her bank accounts and turn her money over to an agent with Treasury. Victim 1 was told she was not to tell anyone about the warrant and to not inform anyone of what she was being requested to do. Victim 1 was told that if she did that, they would be able to clear her warrant.

8. Victim 1, in an attempt to comply and clear her warrant, removed $20,000.00 in U.S. Currency from her Bank of America Savings Account and

another $20,000.00 in U.S. Currency from her Mid America Savings Account. Victim 1 handed over the cash to unknown couriers whom she believed to be employees of Treasury. On the first occasion, the courier arrived at Victim 1's residence after she had withdrawn the first $20,000.00 in U.S. currency. Victim 1 sent a confirmation text to an unknown suspect with an image of the cash, as well as the receipt showing the amount she would be handing over to the courier. An unknown suspect would then call Victim 1's cellphone and remain on the phone with her during the course of the transaction. The unknown suspect would start by telling her the vehicle was arriving. However, the unknown suspect would not tell her the make, model or color of the vehicle until it was pulling up to her driveway. The unknown suspect would instruct Victim 1 to approach the courier, place the package in the backseat of the car and go back inside. Victim 1 advised that the courier would never speak with her, and they never got out of the vehicle. Approximately thirty minutes after Victim 1 would make the delivery, the unknown suspect would send her a photograph of a fake check from the Treasury written out to Victim 1, with the amount she had just handed over in the package. A few weeks would then elapse between each transaction. Between the transactions, the unknown suspect would remain in contact with Victim 1, collecting her daily schedule; specifically, when she had scheduled trips. The unknown suspect would present himself in a protective manner towards Victim 1. He would request to know when she was leaving the house and when she was home. A few weeks would elapse between the first and second transactions. The second transaction was for another

4

$20,000.00 in cash. During the second transaction, the courier was not able to make it through the gate for the victim's neighborhood, so she got into her vehicle and met him outside of the gate.

9. Victim 1 closed out her life insurance policy and Roth individual retirement account (IRA) and moved those funds to a Truist Bank account. Victim 1 was instructed to open the Truist account as she was told: "they ask the least amount of questions." After Victim 1 opened the Truist account, she was instructed to travel to a specific gold dealer in Sarasota. Victim 1 would bring cashiers' checks to the dealer and would then send the suspect photographs of the gold coins and bars she obtained, along with the receipt showing the total amount. Again, after the delivery to the courier, Victim 1 would receive a text message from the unknown suspect with an image of a check from Treasury, in the exact amount of the gold she had just turned over. The fourth transaction took place at the Circle K located at 3702 South US Highway 41, Ruskin, Florida 33570 (within the Middle District of Florida).

10. Prior to the fifth and final transaction, Victim 1 finally contacted law enforcement and as a result did not meet with the courier as scheduled on November 30, 2023. The final transaction was for $27,250.00 in gold coins and bars. Victim 1 arranged a delivery of the package for December 6, 2023.

11. On December 5, 2023, at approximately 1230 hours, Victim 1 was at her residence when a red, small SUV arrived outside. **PATEL** began calling the victim repeatedly in an attempt to get her to deliver the package, despite the meeting not being scheduled for December 5.

5

12. On December 6, 2023, during the morning hours, the unknown suspect sent Victim 1 a text message stating, "Good Morning" which was a normal greeting on a delivery date. Victim 1 responded back confirming the time of the transaction. The unknown suspect contacted Victim 1 via telephone prior to the transaction and convinced her to meet him at the Circle K located at 3702 South US Highway 41, instead of meeting at her residence, as previously requested. The unknown suspect initially informed Victim 1 that the courier would be in a black vehicle; however, when she arrived at the gas station, Victim 1 was advised the courier was in a red jeep. **PATEL** pulled up behind Victim 1's vehicle. Victim 1 then placed the package in the rear passenger seat of the vehicle, as she had done on the previous four occasions with **PATEL**. **PATEL** then drove off northbound on US Highway 41. **PATEL** traveled northbound on Interstate 75, through Hillsborough County, where he exited at State Road 56 in Pasco County. **PATEL** eventually pulled into the Wiregrass Mall where he parked in front of the J.C. Penny department store. **PATEL** was then observed opening the package that Victim 1 had given him. After the package was emptied, **PATEL** pulled out of the parking space and was immediately detained by law enforcement.

13. On December 6, 2023, Detective George Sosa (PCSO) interviewed Victim 2 (D.L.), another victim of the same criminal activity perpetrated by **PATEL**. Victim 2 stated that on August 11, 2023, Victim 2's computer screen turned black, and she was advised to contact customer support in order to fix the issue. Victim 2 made

telephone contact with someone she believed was customer support. That person told Victim 2 that her personal information had been compromised and that her financials were released on the internet, specifically on dark web sites. Victim 2 was further told that her financials had been transferred to someone she believed was an agent with Treasury.

14. On August 15, 2023, Victim 2 obtained $86,000 and opened an account with Chase Bank. Victim 2 proceeded to complete a cash withdrawal of $25,000 on August 25, 2023, and again on August 28, 2023. These funds were then provided to **PATEL**.

15. On September 19, 2023, Victim 2 withdrew $396,271.31 from an individual retirement account (IRA) and utilized these funds to purchase gold/bullion. Victim 2 believed that after purchasing precious metals, they would be safe with Treasury. **PATEL** met with Victim 2 at a Publix located in Trinity, Florida (within the Middle District of Florida), where she provided **PATEL** with the gold that had been purchased. Victim 2 placed the box in the back seat of **PATEL**'s vehicle. During this entire time, Victim 2 believed that **PATEL** was an agent with Treasury. The approximate value of the gold transferred to **PATEL** was $396,271.31.

16. On October 17, 2023, Victim 2 was instructed to purchase more gold bars. Victim 2 completed a purchase order of 3 kilo Canadian Mint Gold Bars and 3 oz Sunshine Mercury Gold Bars for a purchase price of $199,359.03. These bars were sent to Victim 2's residence and later delivered to **PATEL**. While Victim 2 was

waiting for her gold to be delivered, she was instructed to remove her remaining cash from a Suncoast Credit Union account. Victim 2 was told to place the $92,596.00 in a box and provide it to **PATEL** on November 27, 2023. On December 4, 2023, Victim 2 met with **PATEL** in Pasco County and provided the remaining gold bars. Victim 2 placed the gold bars in a box in the back seat of **PATEL**'s vehicle. Victim 2 advised that there were other small transactions that had also occurred, but in total she was at a financial loss of approximately $732,000.00.

17. On December 6, 2023, after **PATEL** was detained, he was read his Miranda Rights by law enforcement. **PATEL** waived his rights and agreed to speak to law enforcement. **PATEL** provided his consent to search his vehicle, as well as his personal cell phone. **PATEL** also provided statements to law enforcement regarding his involvement with Victim 1 and Victim 2. Located inside the vehicle were two receipts in the back seat with the Victim 2's information (name, address, phone number). **PATEL** advised that his pattern of activity was to either arrive at a victim's residence or meet at a business. **PATEL** admitted coming to Florida on more than one occasion and admitted to conducting multiple transactions with victims. **PATEL** would then collect the cash or gold and meet with other individuals. **PATEL** would then meet with those individuals at a pre-determined location. **PATEL** stated that these were unknown individuals. **PATEL** would then provide the unknown individuals with the box that he had collected from the various victims. **PATEL** also advised that he also travelled to other states to commit the same transactions against

victims. **PATEL** stated that he had travelled to North Carolina. **PATEL** further admitted that all of his interactions were with victims, who he identified as "elderly customers."

## CONCLUSION

18. As set forth above, there is probable cause to support that **PATEL** engaged in transactions in violation of 18 U.S.C § 1343. The facts supporting probable cause are based on victim interviews, law enforcement surveillance, items recovered from **PATEL**'s vehicle (after he gave consent), and on his admissions to law enforcement.

19. This concludes my affidavit.

Justin Camp, Special Agent
United States Secret Service

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 4(d) before me this 7th day of December, 2023.

HONORABLE SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

9